## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROSELINE MATTHEWS**<br><br>                    **Plaintiff,**<br><br>      **v.**<br><br>**UNIVERSITY OF PENNSYLVANIA<br>HEALTH SYSTEMS**<br><br>                    **Defendant.** | **CIVIL ACTION NO. 20-4295** |

### MEMORANDUM OPINION

**Rufe, J.**                                                          **September 30, 2022**

Plaintiff Roseline Matthews brings claims of interference and retaliation under the Family Medical Leave Act ("FMLA") against Defendant University of Pennsylvania Health Systems ("Penn").[1] Penn has moved for summary judgment on all claims.[2] For the reasons explained below, the Motion will be granted.

### I.        FACTS

In 2007, Penn hired Plaintiff as a full-time Nursing Support Associate for the Cardiac Care Unit on Founders 8.[3] In 2011, Penn promoted Plaintiff to a full-time Certified Nursing

---

[1] Defendant states that its correct party name is The Trustees of The University of Pennsylvania. Def.'s Mot. Summ. J. [Doc. No. 16] at 1 & n.1.

[2] The Complaint also asserted claims under the Americans with Disabilities Act and the Pennsylvania Human Relations Act, but Plaintiff has elected not to pursue those claims. Pl.'s Memo. Opp'n Summ. J. [Doc. No. 18] at 1 n. 1.

[3] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 50.

Assistant ("CNA") on Founders 11.[4] Megan Banning became Plaintiff's direct supervisor in 2017.[5]

On February 10, 2018, Plaintiff submitted a request for leave to Banning.[6] Plaintiff made the request because she had not seen her mother in six years.[7] Plaintiff contends that she told Banning that she needed to care for her sick mother in Ghana in June of 2018 but that Banning did not respond to this initial request.[8] However, Penn asserts that Banning did respond to this request and that Plaintiff "was requesting to take a vacation over the summer months to go visit family in Ghana."[9] Banning instructed Plaintiff to contact Penn's Disability Management Department to see if her "request could qualify for any other leave of absence" because she could not approve Plaintiff's request.[10]

Plaintiff testified that Plaintiff followed up with Banning on April 18 and explained that her mother's health had started to decline in 2016.[11] Banning again directed Plaintiff to the Disability Management Department.[12] That same day, Plaintiff met with HR and testified in

---

[4] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 54.

[5] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 57–58; *see also* Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶ 7 ("Banning supervised approximately 70 to 75 people, approximately 12 to 14 of which were CNAs.") (internal quotation marks omitted).

[6] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 89; Def.'s Statement of Stipulated Material Facts [Doc. No. 16–1] ¶ 26.

[7] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 94.

[8] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 90–91.

[9] Dep. of Megan Banning, Def.'s Mot. Summ. J. Ex. C [Doc. No. 16-3] at 37.

[10] Def.'s Statement of Stipulated Material Facts [Doc. No. 16–1] ¶ 27. "Given the number of vacation requests in the summer months, it is departmental practice on Founders 11 to approve only one (1) week of vacation per staff member in the summer months. . . ." Def.'s Non-Stipulated Statement of Facts [Doc. No.16-2] ¶ 2.

[11] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶¶ 28, 30, 40.

[12] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶ 29.

deposition that she was told that "when I'm ready to leave, I should get the FMLA paper, take it with me and let a doctor sign everything and fax it to them and I'll be okay until I come back."[13]

Plaintiff booked her flight to Ghana on July 20, 2018.[14] On July 23, she requested and received notice of her eligibility for continuous FMLA leave from July 30 to September 7.[15] Plaintiff states that Banning knew the day she was leaving and the day she was returning.[16] Banning agrees that Plaintiff told her she was traveling to Ghana, but stated that she never confirmed with Plaintiff "whether she had left the United States."[17] Shannon Camps, Penn's Employee Relations and Retention Specialist, was notified by email of Plaintiff's leave request.[18] However, both Camps and Yomarra Arroyo of Penn's Disability Management contend that they did not have confirmation that Plaintiff was in Ghana.[19] Penn did not attempt to contact Plaintiff other than by the letters sent to the Pennsylvania residence, and Plaintiff did not provide Penn with any personal contact information to reach her during her leave.[20]

The FMLA eligibility notice stated that for Penn to determine whether the absence qualified as FMLA leave, Plaintiff had to return the certification form by August 7, and that "if sufficient information is not provided in a timely manner, [the] leave may be delayed or

---

[13] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 98.

[14] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶ 31.

[15] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶¶ 32–33, 35.

[16] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 98–99.

[17] Dep. of Megan Banning, Def.'s Mot. Summ. J. Ex. C [Doc. No. 16-3] at 74.

[18] Pl.'s Opp'n Summ. J. Ex. G [Doc. No. 18-7].

[19] Def.'s Non-Stipulated Statement of Facts [Doc. No.16-2] ¶¶ 23–24.

[20] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 110.

denied. . . ."[21] Plaintiff faxed the certification form to Disability Management on August 8 from Ghana.[22] The form included contact information for her mother's doctor, Dr. Ashong.[23]

On August 9, Penn sent a written notification to Plaintiff's Pennsylvania residence highlighting several sections of the form that were incomplete and directing her to return the completed form by August 18.[24] On August 22, Penn mailed another notice to Plaintiff's Pennsylvania residence informing her that Penn had denied her FMLA request because she had not returned a complete certification form by August 18.[25] Penn sent a third notice to Plaintiff's Pennsylvania residence on August 22 instructing her to either provide Disability Management with a complete certification form and an explanation for the delay, or return to work with a completed certification form and a Return to Work form by September 4, 2018.[26] Penn did not attempt to request this missing information from Dr. Ashong.[27] Upon her return to the United States on September 7, Plaintiff called Penn, and she was notified that her employment had been terminated.[28] After unsuccessfully appealing her termination within Penn and exhausting her administrative remedies, Plaintiff filed this lawsuit.

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[21] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶ 34.

[22] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶ 38.

[23] Pl.'s Mem. Opp'n Summ. J. Ex. H [Doc. No. 18-8].

[24] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶¶ 41–42, 45.

[25] Id. at ¶¶ 48–49.

[26] Id. at ¶¶ 51–53. Plaintiff's fiancé shared the home with Plaintiff and did not travel to Ghana. Def.'s Non-Stipulated Statement of Facts [Doc. No.16-2] ¶22.

[27] Dep. of Jill Gehman, Pl.'s Opp'n Summ. J. Ex. F [Doc. No. 18-6] at 31 (stating that Penn would not reach out to a person's individual doctor for information).

[28] Def.'s Statement of Stipulated Material Facts [Doc. No. 16-1] ¶¶ 54–56.

law."[29] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[30] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[31] To evaluate a motion for summary judgment, it is necessary to "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[32] It is improper for a court "to weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[33] The non-moving party must support its opposition to the motion by pointing to evidence in the record.[34] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[35]

### III.      DISCUSSION

#### A.      FMLA Interference Claim

A plaintiff establishes an FMLA interference claim by showing that 1) she was an eligible employee under the FMLA; 2) her employer was subject to FMLA requirements; 3) she was entitled to FMLA leave; 4) she provided notice to her employer of her intention to take FMLA leave; and 5) the employee was denied access to her entitled FMLA benefits.[36]

---

[29] Fed. R. Civ. P. 56(a).

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[31] *Id.*

[32] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[33] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[34] *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986).

[35] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[36] *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014); *see also Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006) ("Because the FMLA is not about discrimination, a *McDonnell–Douglas* burden-shifting analysis is not required.").

The parties dispute whether Plaintiff was entitled to FMLA benefits.[37] An employee may take FMLA leave to care for a parent with a serious health condition, i.e. a "physical or mental condition" subject to continuing treatment by a health care provider.[38] Continuing treatment applies to chronic conditions that cause episodic periods of incapacity,[39] which means conditions that periodically impede an individual's ability to care for oneself, perform manual tasks, walk, stand, think, breathe, or interact with others.[40]

The factfinder decides whether an individual's specific health condition is serious or minor,[41] but the court determines whether a plaintiff meets her burden of proving the existence of an FMLA-eligible condition as a matter of law.[42] The Third Circuit allows a combination of medical and lay testimony to prove incapacity but does "not find lay testimony, by itself, sufficient to create a genuine issue of material fact. Some medical evidence is still necessary to show that the incapacitation was 'due to' the serious health condition."[43]

Penn contends that Plaintiff was not entitled to FMLA benefits because she has not satisfied her burden of proof that her mother suffered from a serious health condition as a matter

---

[37] Under the FMLA, an eligible employee is entitled to "a total of 12 workweeks of leave during any 12-month period" and reinstatement in her former, or an equivalent, position without losing any previously accrued employment benefits. 29 U.S.C. § 2612(a)(1); *Sommer*, 461 F.3d at 399 (citing 29 U.S.C. § 2614(a)).

[38] 29 U.S.C. § 2612(a)(1)(c); 29 C.F.R. § 825.113(a).

[39] A qualifying chronic condition under the FMLA requires periodic visits conducted over an extended period of time that "may cause episodic rather than a continuing period of incapacity." 29 C.F.R. § 825.115(c)(1)–(3) (2013).

[40] "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b); *see also Wegelin v. Reading Hosp. & Med. Ctr.*, 909 F. Supp. 2d 421, 427 (E.D. Pa. 2012) (identifying applicable "daily activities") (quoting 29 C.F.R. § 1630.2(i)).

[41] *See Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 189–190 (3d Cir. 1997) (reversing district court determination that peptic ulcer disease was not a serious health condition under the FMLA as a matter of law).

[42] *Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 158–61 (3d Cir. 2010); *Bonkowski v. Oberg Indus., Inc.* 787 F.3d 190, 203–04 (3d Cir. 2015).

[43] *Schaar*, 598 F.3d at 161 (interpreting "incapacity" as it relates to inpatient care); *see Kissinger v. Mennonite Home*, No. 20-3000, 2021 WL 5356801, at *10 (E.D. Pa. Nov. 17, 2021) (applying *Scharr*'s statutory interpretation to episodic incapacity).

of law.[44] Plaintiff presented substantial lay testimony of her mother's health condition and its limitations on her ability to perform daily activities. She testified that her mother has been suffering from osteoporosis and neuropathy for thirteen to fourteen years,[45] is wheelchair bound,[46] and "need[s] assistance with using the bathroom … bathing … [and] get[ting] around."[47]

Penn argues that Plaintiff fails to bolster her lay testimony with medical evidence of her mother's incapacity for purposes of FMLA leave.[48] Dr. Ashong wrote on the FMLA certification form that Plaintiff's mother had osteoarthritis and neuropathy for 10 years, and checked the boxes that the patient required treatment visits at least twice a year; that the patient will not be incapacitated for a single continuous period of time; that the condition will cause episodic flare ups periodically preventing the patient from participating in normal daily activities, and the patient will need care during the flare ups.[49] Other information was left blank; Dr. Ashong did not provide information requested on the form as to the frequency and duration of the flare ups, any regimen of continuing treatment, whether follow-up treatments were required, and whether the patient would require care on an intermittent or reduced schedule basis.[50] This was the only medical evidence presented by Plaintiff to Penn, and no additional information has been

---

[44] Def.'s Reply Supp. Mot. Summ. J. [Doc. No. 19] at 6–8. Plaintiff argues that Defendant has waived this argument. *See* Pl.'s Surreply Opp'n Summ. J. [Doc. No. 20] at 1. However, under Judge Rufe's Policies and Procedures for Summary Judgment, which apply in this case, Defendant properly raised the argument in its first full briefing, to which Plaintiff had a full opportunity to respond. *See* J. Rufe Pol'ys & Procs. at 4, Attach. B.

[45] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 93.

[46] Pl.'s Mem. Opp'n Summ. J. Ex. H [Doc. No. 18-8] at 3.

[47] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 137.

[48] Def.'s Reply Supp. Mot. Summ. J. [Doc. No. 19] at 6.

[49] Pl.'s Mem. Opp'n Summ. J. [Doc. No. 18-8] Ex. H at 4, 6. Dr. Ashong also checked boxes that the patient had not been admitted for an overnight stay, no medication was prescribed, the patient was not referred to other health care providers, and the medical condition is not pregnancy. Dr. Ashong also wrote that Plaintiff's mother may need physiotherapy, which was not available in his facility.

[50] Pl.'s Opp. Mot. Summ. J. [Doc. No. 18-8] Ex. H.

presented on summary judgment.[51] The answers on the form do not corroborate Plaintiff's testimony that the incapacitation for which Plaintiff was to provide care is due to a serious health condition,[52] or that the episodic flare ups occurred during the relevant time period. In addition, Plaintiff has not put forth any medical records or opinions regarding her mother's conditions.[53] Even if Plaintiff is correct that Penn failed to provide her with a reasonable opportunity to cure the deficiencies in the form, she has not shown that the deficiencies could have been corrected.[54] Therefore, summary judgment will be granted as to the claim of FMLA interference.

### B.     FMLA Retaliation Claim

A plaintiff establishes a *prima facie* FMLA retaliation claim by showing that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."[55]

---

[51] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 115. Plaintiff argues that she requested an opportunity to provide additional information after her termination, but she has not shown what information she would have provided. Pl.'s Sur-Reply Opp'n Summ. J. [Doc. No. 20] at 7.

[52] Significantly, Dr. Ashong's response to Question 7 failed to corroborate Plaintiff's testimony regarding her mother's necessary care, specifically that Plaintiff's assistance is needed with basic daily tasks due to her health condition. *See* Pl.'s Opp. Mot. Summ. J. Ex. H [Doc. No. 18-8] at 6.

[53] Dep. of Rosalie Matthews, Pl.'s Opp'n Summ. J. Ex. A [Doc. No. 18-1] at 115 (testimony of Plaintiff that she did not obtain her mother's medical records from Dr. Ashong).

[54] *See Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 156 (3d Cir. 2015) (recognizing that district courts within the Third Circuit have found that an interference claim may be stated for employer's breach of obligation to give an opportunity to cure any deficiencies in a form "where the employee established entitled or likely entitlement to FMLA benefits"). Plaintiff has also not shown what actions she would have taken if she had received the notices. Similarly, Plaintiff has failed to show any injury from Penn's actions in February and April of 2018. *See Conway v. ConnectOne Bank*, No. 21-1141, 2022 WL 1024616, at *5 (3d Cir. Apr. 6, 2022) (holding that the plaintiff had not "pointed to evidence showing a link between the notices he was not provided and any purported injury.")

[55] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). Once the *prima facie* case has been established, the claim can be proven using the mixed-motive theory or the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Egan v. Del. River Port Auth.*, 851 F.3d 263, 274 (3d Cir. 2017) (mixed-motive theory); *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151–52 (3d Cir. 2017) (*McDonnell Douglas* framework).

The parties dispute whether Plaintiff invoked her right to FMLA-qualifying leave.[56] "To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take [FMLA-qualifying] leave."[57] As with the interference claim, Plaintiff must establish that her mother had a serious medical condition.[58] Because she has not, the retaliation claim fails for the same reason as her interference claim. Penn's motion for summary judgment on FMLA retaliation will be granted.

## IV.     CONCLUSION

By failing to provide any medical evidence to support her FMLA claims, Plaintiff has not established a qualifying leave under the FMLA and therefore cannot prove interference or retaliation by Penn. Accordingly, the Motion for Summary Judgment will be granted. An order will be entered.

---

[56] Def.'s Reply Supp. Mot. Summ. J. [Doc. No. 19] at 16–17; Pl.'s Surreply Opp'n Summ. J. [Doc. No. 20] at 8–9.

[57] *Lichtenstein*, 691 F.3d at 303; 29 C.F.R. § 825.302(c).

[58] *See Barker v. R.T.G. Furniture Corp.*, 375 F. App'x 966, 968 (11th Cir. 2010); *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 337-38 (6th Cir. 2009). Although the Third Circuit has not directly addressed whether a serious medical condition must be established, it has held that the leave must be qualifying under the FMLA. *See Lichtenstein*, 691 F.3d at 301–02 (identifying the first element of the plaintiff's FMLA retaliation claim as requiring her to have 'invoked her right to FMLA-qualifying leave."); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding that firing an employee for a "valid request for FMLA leave" may constitute retaliation); *see also Carpenter v. York Area United Fire & Rescue*, No. 18- 2155, 2020 WL 1904460, at *9–10 & n. 8 (M.D. Pa. Apr. 17, 2020) (discussing the Third Circuit cases in the context of the "eligible employee" requirement in retaliation claims).